

Order Entered.

David L. Bissett
United States Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ROSS E. NAGOT, | ) | Case No. 18-bk-754 |
| | ) | |
| Debtor. | ) | Chapter 7 |
| _____ | ) | |
| | ) | |
| ROSS E. NAGOT and | ) | |
| MARTIN P. SHEEHAN, Chapter 7 Trustee, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adversary No. 19-ap-04 |
| | ) | |
| SUNCOAST CREDIT UNION f/k/a | ) | |
| SUNCOAST SCHOOLS FEDERAL | ) | |
| CREDIT UNION, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

Pending before the court are cross motions for summary judgment. Ross E. Nagot and Martin P. Sheehan (the "Plaintiffs") seek summary judgment on their complaint asserting several causes of action, including for a violation of the Uniform Enforcement of Foreign Judgments Act ("UEFJA") and West Virginia Consumer Credit Protection Act ("WVCCPA"). In support of their motion, the Plaintiffs contend that Suncoast Credit Union failed to appropriately domesticate its judgment in West Virginia before enforcing the same by a wage garnishment.

Suncoast Credit Union opposes the Plaintiffs' motion and seeks summary judgment. It asserts that it is entitled to summary judgment because the undisputed material facts establish that it did not enforce its judgment against Mr. Nagot in West Virginia. As a result, it contends that the Plaintiffs' actions for violations of the UEFJA and WVCCPA are without merit.

1

For the reasons stated herein, the court will enter a separate order granting summary judgment to Suncoast on Counts I, II, III, and V. The court will grant the Plaintiffs summary judgment as to Suncoast's liability on Count IV but set further proceedings as discussed herein.

## I. STANDARD OF REVIEW

Federal Rule of Civil Procedure ("Rule") 56, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment is only appropriate if the movant demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment must make a prima facie case by showing: first, the apparent absence of any genuine dispute of material fact; and second, the movant's entitlement to judgment as a matter of law on the basis of undisputed facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant bears the burden of proof to establish that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Demonstrating an absence of any genuine dispute as to any material fact satisfies this burden. *Id.* at 323. Material facts are those necessary to establish the elements of the cause of action. *Anderson*, 477 U.S. at 248. Thus, the existence of a factual dispute is material — thereby precluding summary judgment — only if the disputed fact is determinative of the outcome under applicable law. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). A movant is entitled to judgment as a matter of law if "the record as a whole could not lead a rational trier of fact to find for the non-movant." *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (citation omitted); *see also Anderson*, 477 U.S. at 248.

If the moving party shows that there is no genuine dispute of material fact, the nonmoving party must set forth specific facts that demonstrate the existence of a genuine dispute of fact for trial. *Celotex Corp.*, 477 U.S. at 322-23. The court is required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Shaw,* 13 F.3d at 798. However, the court's role is not "to weigh the evidence and determine the truth of the matter [but to] determine whether there is a need for a trial." *Anderson*, 477 U.S. at 249-50. Nor should the court make credibility determinations. *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). If no genuine issue of material fact exists, the court has a duty to prevent claims and defenses not supported in fact from proceeding to trial. *Celotex Corp.*, 477 U.S. at 317, 323-24.

## II. BACKGROUND

On June 26, 2012, Suncoast obtained a judgment against Mr. Nagot in the Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Florida. Suncoast subsequently garnished Mr. Nagot's wages, including more than $1,288.68[1] during the ninety days before he filed his voluntary petition for Chapter 7 relief. During that period, Mr. Nagot resided in West Virginia and worked for Home Depot U.S.A., Inc. Notably, however, Suncoast garnished Mr. Nagot's wages payable by Home Depot by serving Home Depot—via its registered agent—with a Writ of Garnishment in Tallahassee, Florida. On August 9, 2018, Mr. Nagot filed his voluntary Chapter 7 bankruptcy petition.

Postpetition, Suncoast garnished an additional $773.30 from Mr. Nagot's wages. It subsequently refunded $774.70 to Mr. Nagot. Additionally, Suncoast refunded the wages it garnished during the 90-day preference period. Regarding those wages, however, Suncoast refunded them to their source, Home Depot, rather than paying them directly to the Plaintiffs. At least as of the filing of the pending motions for summary judgment, Mr. Nagot had not yet received the proceeds.

On January 24, 2019, the Plaintiffs initiated this adversary proceeding, which Suncoast answered and moved to dismiss Counts II, III, and V. By memorandum opinion and order dated December 19, 2019, the court granted Suncoast's motion and dismissed Counts II, III, and V of the Plaintiffs' complaint. The court dismissed Count II based, in part, on the Plaintiffs' statement during a September 2019 teleconference that they incorrectly pleaded their cause of action in Count II. Regarding Count III, the court found that the Plaintiffs failed to make "any factual statement to support [their] allegations that Suncoast acted willfully and in disregard to violate West Virginia law." Finally, the court dismissed Count V based upon its opinion that "the fact that the Plaintiffs seek to avoid a 'transfer' under § 547(b) belies the contention that the property to be recovered is property of the bankruptcy estate."

The court's dismissal was without prejudice, however, and the Plaintiffs filed their amended complaint on January 17, 2020. Notably, the Plaintiffs did not amend Counts III or V in any consequential way. On February 20, 2020, Suncoast answered, and the parties subsequently

---

[1] The record in this regard is somewhat imprecise in that the Plaintiffs alleged in their amended complaint an amount of $1,284.88 garnished during the preference period, but they contend at summary judgment the amount garnished was $1,288.68, and it does not appear that Suncoast contests that assertion.

3

engaged in discovery and discussions aimed at amicably resolving the proceeding. Ultimately, the settlement discussions did not bear fruit, and the parties filed the extant motions for summary judgment.

### III. ANALYSIS

At the crux of this dispute is whether Suncoast violated the UEFJA when it garnished Mr. Nagot's wages without domesticating its Florida judgment in West Virginia where Mr. Nagot lived and worked. The Plaintiffs contend that Suncoast's failure to domesticate its judgment in West Virginia violated the UEFJA because its garnishment of Mr. Nagot's wages constituted the enforcement of its judgment in West Virginia. Specifically, the Plaintiffs assert that Suncoast's garnishment occurred in West Virginia because that is where Mr. Nagot earned the wages garnished. For support in that regard, the Plaintiffs rely on *Mem'l Hosp. of Martinsville v. D'Oro*, No. 4:10MC00001, 2011 WL 2679593 (W.D. Va. July 8, 2011).

Suncoast contends that it had no obligation to domesticate its judgment in West Virginia. It asserts that it enforced its judgment solely in Florida. According to Suncoast, it obtained a judgment against Mr. Nagot in Florida, where Mr. Nagot lived at least during the time leading to the judgment, and collected upon its judgment by garnishing Mr. Nagot's wages from Home Depot, whose principal place of business is Atlanta, GA. Notably, it states that it mailed Notice of the Writ of Garnishment to Mr. Nagot at his address in Bonita Springs, Florida, and served Home Depot with the garnishment in Tallahassee, Florida. Therefore, according to Suncoast, it did not violate the UEFJA by collecting its judgment in West Virginia without first domesticating the judgment in accordance with the act. In that regard, Suncoast contends that *D'Oro* is factually distinguishable from the case before the court and thus unpersuasive.

The UEFJA regulates a debt collector or person "seeking to enforce a foreign judgment in this state." W. Va. Code § 55-14-2. One "who violates any provision of that section "shall be liable to the person against whom the judgment is sought to be enforced for actual damages and . . . a penalty in an amount not more than $1,000." *Id*. A willful violation of the UEFJA is punishable by a fine up to "$1,000 or confine[ment] in jail not more than one year, or both fined and confined." *Id*. Notably, the conduct regulated by the UEFJA relates to information that shall be transmitted to the judgment-debtor. For instance, the UEFJA provides the following:

> A debt collector *seeking to enforce a foreign judgment in this state* shall ensure that any suggestee execution or other legal process . . . shall clearly state . . . any

4

>property exempt in the state in which the original judgment was entered and it shall specify that the property is exempt from execution . . . .

W. Va. Code § 55-14-2 (emphasis added).  Notably, that is the extent of the regulated conduct, at least for which the UEFJA provides a remedy.  The issue is thus whether Suncoast's wage garnishment constitutes enforcement of its judgment in West Virginia.  Only if it does, is the court faced with a question whether Suncoast violated the UEFJA as set forth above.

In *D'Oro*, the court was faced with a debtor-defendant's motion to quash a garnishment summons and writ of execution.  *D'Oro*, 2011 WL 2679593, at *1.  There, the debtor-defendant resided and worked in Pennsylvania, and the garnishee was based in Ohio.  *Id*.  Indeed, the Garnishment Summons acknowledged the debtor-defendant's residence in Pennsylvania.  *Id.*  Nonetheless, Memorial Hospital of Martinsville argued that "because the Department of Veterans Affairs has hospitals in the Western District of Virginia, [that] Court is able to execute upon and garnish any wages paid by the VA, regardless of where the [d]ebtor earns those wages."  *Id*. At *3.

In rejecting Memorial Hospital's argument, the court noted in dicta that "[i]t is generally the law . . . that intangibles, such as wages, are located where their owner is located."  *Id*. at *5 (citing *Livingston v. Naylor*, 920 A.2d 34, 52 (Md. App. 2007) and *Rush v. Savchuk*, 444 U.S. 320, 330 (1980)).  Despite the court's statement in that regard, it was critical for the court in *D'Oro* that the garnishee was beyond the territorial limits of Virginia.  *See D'Oro*, 2011 WL 2679593, at *3 ("To be certain, then, the Writ of Execution issued in the case at bar is effective as to the [d]ebtor's wages only insofar as those wages are located in the Commonwealth of Virginia.").  Indeed, the court granted the debtor-defendant's motion to quash the garnishment "[b]ecause the [d]ebtor's wages are not located in Virginia . . . ."  *Id*. at *6.

Based upon the foregoing, the court finds *D'Oro* inapposite.  By comparison, the court is persuaded by the court's analysis in *Peters v. Maxwell & Morgan Corp.,* No. 2:18-cv-01399-GMN-EJY, 2019 WL 4781844 (D. Nev. Sept. 30, 2019).  There, a judgment-debtor living in Nevada filed suit challenging the garnishment of his wages in Arizona.  Specifically, the plaintiff sold his Arizona home in 2013 and moved to Nevada, where he worked for Caesars Entertainment.  *Id*. at *1.  In 2016, the creditor sued the judgment-debtor in Arizona and ultimately obtained a judgment.  *Id.*  To collect on its judgment, the creditor subsequently secured a Writ of Garnishment in Arizona and served it upon Caesar's registered agent in Arizona.  *Id.* at *2.

5

In opposing the creditor's motion to dismiss, the judgment-debtor argued that "because he earned the garnished wages in Nevada, [the creditor] had to comply with Nevada's [UEFJA] . . . ." *Id*. at *3. For support, the judgment-debtor relied on *D'Oro*, among other cases. *Id*. Ultimately, the court in *Peters* distinguished *D'Oro* and the other cases cited by the judgment-debtor and dismissed the complaint without prejudice. *Id*. at *5. Critical to the court's disposition were the facts that the judgment-debtor did not "challeng[e] the Arizona court's ability to authorize garnishment of [his] wages in connection to Caesar's registered agent in Arizona." *Id*. at *4. Additionally, the court noted that "materially absent from the [a]mended [c]omplaint are allegations that [the creditor] took actions in Nevada to garnish [judgment-debtor's] wages." *Id*.; *see West v. Ford Motor Credit Co.*, Civ. Act. No. 12-5155, 2013 WL 497159, at *4 (E.D. Pa. Feb. 11, 2013) ("As we discussed *supra*, under Pennsylvania law a creditor may enforce another state's judgment by garnishing a Pennsylvania resident's wages, earned in Pennsylvania, if the writ of garnishment was issued and executed in the state that entered the judgment.").

Here, the undisputed material facts, which are analogous to *Peters*, are that Suncoast obtained a judgment against Mr. Nagot, who at least at the time was a Florida resident. Subsequently, Mr. Nagot moved to West Virginia where he worked for Home Depot in Bridgeport, West Virginia. Suncoast, however, served its Writ of Garnishment on Home Depot, whose principal place of business is in Georgia, at its registered agent in Tallahassee, Florida. Notwithstanding whether Suncoast had reason to believe Mr. Nagot resided in West Virginia—and the record is disputed in that regard—the court finds that the undisputed facts support a finding here that Suncoast did not enforce its judgment in West Virginia. Although neither party has pointed the court to Florida law on the topic, the court is persuaded in the absence of contrary authority or allegations, that Suncoast complied with the Florida garnishment scheme. *See Peters*, 2019 WL 4781844 at *4 (citing *Randall v. Maxwell & Morgan, P.C.*, 321 F. Supp. 3d 978, 984 (D. Ariz. 2018)). Therefore, because Suncoast confined its collection activity to Florida, it did not violate the UEFJA in West Virginia. The court will therefore grant Suncoast summary judgment as to Count I of the Plaintiffs' complaint.

Regarding Counts II and III, Suncoast is also entitled to summary judgment based upon the court resolution of Count I. Specifically, the Plaintiffs alleged in Count II several violations of the West Virginia Consumer Credit Protection Act ("WVCCPA"). In Count III, the Plaintiffs

allege intentional infliction of emotional distress.  Notably, however, the Plaintiffs' allegations in those regards are predicated upon Suncoast's violation of the UEFJA.  As such, those actions fail.[2]

Regarding Count IV, the court finds it appropriate to grant the Plaintiffs summary judgment as to liability based upon Suncoast's concession that it garnished more than $1,288.68 of Mr. Nagot's wages during the preference period—90 days before the Chapter 7 case.  Notably, however, there appears to be a dispute regarding an available remedy at this phase of the proceeding.  Suncoast contends that it refunded the garnished wages to Home Depot or the entity handling its payroll because that is from where it received the garnished wages in the first instance.  Notably, neither Home Depot nor its payroll entity are currently before the court.  The court will, therefore, grant the Plaintiffs' motion for summary judgment as to liability on Count IV, in the amount of $1,288.68, but will set a telephonic hearing to discuss prospects for Mr. Nagot obtaining the garnished wages from his employer.

Finally, as to Count V, the court will grant Suncoast's motion for summary judgment.  As with Count III, the court finds it appropriate to grant Suncoast judgment because the court, quite frankly, does not perceive Count V to be viable at this phase of the proceeding.  In its memorandum opinion supporting its dismissal of Count V, the court noted "the fact that the Plaintiffs seek to avoid a 'transfer' under § 547(b) belies the contention that the property to be recovered is property of the bankruptcy estate."  As such, the court finds that Count V fails.

## IV. CONCLUSION

Consistent with Fed. R. Bankr. P. 7058, which incorporates Fed. R. Civ. P. 58(a), the court will enter a separate order granting Suncoast's motion for summary judgment as to Counts I, II, III, and V.  The court will also grant the Plaintiffs summary judgment as to Suncoasts liability on Count IV but will set further proceedings to determine prospects for Mr. Nagot obtaining the refund of his wages garnished by Suncoast and what relief, if any, this court can grant based upon this holding.

---

[2] Additionally, to be clear, the court dismissed Counts II and III without prejudice to the Plaintiffs amending their complaint.  The Plaintiffs nominally amended Count II, but as far as the court can tell, the Plaintiffs did not amend Count III in any meaningful way such that it did not likely survive the court's dismissal order.  Restating Count III in the amended complaint without a consequential amendment should not give Plaintiffs a second bite at the apple in that regard.  In any event, Suncoast addressed all counts on summary judgment, so the court disposes of them on the merits.

7